IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SCOT PARK,                          )        CV NO 10-00445-DAE-KSC
                                    )
            Plaintiff,              )
                                    )
      vs.                           )
                                    )
OAHU TRANSIT SERVICES, INC.,        )
dba THEBUS; STANFORD                )
SHIROMA; RALPH NISHIMURA;           )
LULANI SANTIAGO; AILEEN             )
BLACK,                              )
                                    )
            Defendants.             )
_____)


ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; (2)
DISMISSING WITH PREJUDICE PLAINTIFF'S TITLE VII CLAIM AGAINST
THE INDIVIDUAL DEFENDANTS; (3) DISMISSING WITHOUT PREJUDICE
ALL REMAINING CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS;
AND (4) GRANTING PLAINTIFF LEAVE TO AMEND

        On August 5, 2011, the Court heard Defendants' Motion to Dismiss.

(Doc. # 30.) Andre S. Wooten, Esq., Plaintiff's counsel, failed to appear at the

hearing on behalf of Plaintiff[1]; Ryan E. Sanada, Esq., appeared at the hearing on

_____

        [1] Three calls were made in the hallway for Plaintiff with no response.  In
addition, the Court notes that it called Mr. Wooten's office in an effort to locate
him, but was unable to do so.  Mr. Wooten filed a letter of apology with the Court
accepting responsibility for not appearing at the hearing.  (Doc. # 50.)  The Court
accepts counsel's apology and will take no further action with respect to that
matter.

behalf of Defendants.  Because Plaintiff did not appear at the hearing, and because

the matter has been sufficiently briefed, pursuant to Local Rule 7.2(d), the Court

finds this matter suitable for disposition without a hearing.  After reviewing the

motions and the supporting and opposing memoranda, the Court GRANTS

Defendants' Motion to Dismiss (Doc. # 30).  The Court DISMISSES WITH

PREJUDICE Plaintiff's Title VII claim and DISMISSES WITHOUT PREJUDICE

Plaintiff's remaining claims, as against the Individual Defendants.  Plaintiff is

GRANTED leave to amend his complaint.

## BACKGROUND

Plaintiff is a Korean American male who has been employed by

Defendant Oahu Transit Services, Inc., dba TheBus ("OTS") for the past two years.

(First Amended Complaint, "FAC," Doc. # 4 ¶ 1.)  Plaintiff alleges that during the

time he has been employed by OTS, he has been subject to verbal harassment,

discrimination, and retaliation.  He specifically attributes such conduct to

Defendants Stanford Shiroma ("Shiroma") and Ralph Nishimura ("Nishimura"),

who are both Japanese American, Lulani Santiago ("Santiago"), who is Filipino

American, and Aileen Black ("Black"), who is

Filipino-Chinese-Hawaiian-American[2].  (Id. ¶¶ 3–6.)  Plaintiff is a bus driver for

OTS, Shiroma is an employee of OTS, and Nishimura, Santiago, and Black are all

supervisor employees at OTS.

Plaintiff points to several instances of alleged harassment in his

complaint.  He first contends that Defendants Shiroma and Black yelled and

screamed at him over the bus communication system, such that the calls were

heard by other bus drivers (Id. ¶ 11), and that they spoke to him "as though he were

retarded or unintelligent," (Id. ¶ 12).  Plaintiff alleges that Shiroma and Black did

not talk to other bus drivers who were predominantly Japanese or Hawaiian in a

similar manner.  (Id. ¶ 12.)

Plaintiff further states that after attempting to address this directly

with Shiroma and Black, to no avail, he filed a complaint with Defendant

Nishimura.  (Id. ¶ 13.)  Nishimura, a long time friend of Shiroma, allegedly told

Plaintiff that if he went ahead with his complaint, he could get fired, suspended, or

disciplined for making a false claim of discrimination.  (Id. ¶ 14.)  Additionally,

_____

[2] The Court notes that paragraph 6 of Plaintiff's FAC, introducing Defendant
Aileen Black, states that "Defendant Santiago is a Filipino-Chinese-Hawaiian
American citizen of the United States of America . . . ."  (FAC ¶ 6.)  The Court
presumes that Plaintiff intended to continue describing Defendant Black's
ethnicity, and not Defendant Santiago, as Santiago was introduced and described in
paragraph 5.

Plaintiff claims that although central dispatch calls for TheBus system are supposed to be recorded and thus easily retrievable, no investigation was ever made into his complaint.  (Id. ¶¶ 15–16, 18.)  Plaintiff states that "tirades" representative of the ones he complains of can be heard on the tapes for November 30, 2009, December 6, 2009, February 2, 2010, February 3, 2010, February 22, 2010, February 27, 2010, and March 15, 2010, amongst others.  (Id. ¶ 16.)

On March 1, 2010[3], Plaintiff met with assistant superintendent Tracy Kim[4] ("Kim") to discuss his discrimination claims against Defendants Shiroma and Black, and Kim allegedly told Plaintiff he was "hearing voices and seeing things [that] were not there," and that he "had no credibility because he had not worked" at TheBus as long as Shiroma and Black.  (Id. ¶ 19.)  Plaintiff was then apparently asked by Kim to sign a waiver of privacy of any of his records for counseling purposes, and that it was company policy to release records of any type of counseling.  (Id. ¶ 20.)

_____

[3] The FAC actually states that this meeting occurred on May 1, 2010, however, the remainder of the complaint occurs in chronological order and the next stated date is March 3, 2010, thus it appears as though Plaintiff actually meant to state that the meeting with Kim occurred on March 1, 2010.  This is further evidenced by the fact that Plaintiff indicates that follow up phone calls and meetings took place on March 3, and 8, 2010.  See (FAC ¶¶ 23–24.)

[4] The Court notes that Kim is not a named defendant in the instant action.

On March 15, 2010, Plaintiff states that the seat pressure valve in his bus broke so he called central controller Shiroma who told him to go to the bus depot in Kalihi. (Id. ¶ 26.)  After doing so, Shiroma allegedly called Plaintiff and told him that he was "putting in a negative personnel report about the matter," saying that he had given Plaintiff additional instructions which Plaintiff states he never heard.  (Id.)  Plaintiff had a meeting with Louis Navarro[5] ("Navarro") the following day to discuss the previous day's incident, and Navarro allegedly stated that he believed Shiroma, and that Plaintiff had a bad "work history."  (Id. ¶ 27.) Plaintiff claims this could not be true since he has never had any accidents or been accused of serious infractions.  (Id. ¶ 28.)

On March 31, 2010, Plaintiff was told by Kim that an allegation had been made against him that he had given too much time on transfer tickets to customers.  (Id. ¶ 29.)  Plaintiff denied doing this, but Kim allegedly said she did not believe Plaintiff and suspended him.  (Id. 29–30.)  Plaintiff further states that on April 5, 2010, Kim and Navarro told him he was a bad employee and that he had many complaints against him, and on April 14, 2010, he was suspended for 10 days and ordered to attend an anger management session.  (Id. ¶ 32.)

---

[5] The Court notes that Navarro is not a named defendant in the instant action.

On April 27, 2010, Plaintiff had a meeting with Ralph Faufata[6] ("Faufata"), Vice President of OTS, and Darryl Ohelo, concerning his "pending termination." (Id. ¶ 33.) Plaintiff alleges that this occurred after he filed a complaint about harassment by Kim and Defendant Nishimura on March 3, 2010, and had previously complained about discriminatory harassment by Defendants Shiroma and Black. (Id. ¶ 33.) Plaintiff claims that Faufata accused Plaintiff of lying about the investigation into whether or not he gave excessive transfer time, and that Faufata "used his greater size to attempt to intimidate and threaten [P]laintiff of lying while attempting to get Plaintiff to confess to a falsehood, which Plaintiff refused to accede to." (Id. ¶ 35.)

Plaintiff also points to an occasion when he was confronted by a "mentally unstable passenger on TheBus," and states that he pressed all of the emergency buttons, but that no one in the central dispatch office ever called back to render assistance. (Id. ¶ 42.) Plaintiff claims the employees in the dispatch office said they were too busy to respond to his call of distress, and that this behavior violates OTS's own rules and is retaliation which puts his safety at risk. (Id. ¶¶ 43–44.) Plaintiff claims that as a result of the harassment he receives from

---

[6] The Court notes that Faufata and Daryl Ohelo are not named defendants in the instant action.

the central control dispatch office, and the failure of the office to respond to his distress calls, he had to take family leave from work, and that even after returning, he was cited for minor infractions in a retaliatory manner because no other drivers were cited for similar minor allegations.  (Id. ¶¶ 47–48.)

Plaintiff states that he also filed a complaint with the Federal Equal Employment Opportunity Commission in April 2010, and that after doing so, discrimination and harassment against him both continued and elevated in gravity.  (Id. ¶ 50.)  Plaintiff then cites the example that on June 22, 2010, OTS notified Plaintiff about a complaint it received from a female claiming she was hurt while a passenger on Plaintiff's bus, to which Plaintiff confirmed that no such incident had occurred on his bus.  (Id. ¶ 51–60.)  Plaintiff was allegedly told by supervisor Defendant Santiago, "[w]hat goes around comes around," and that Defendant Nishimura is Santiago's friend.  (Id. ¶ 60.)

On July 29, 2010, Plaintiff filed a Complaint against OTS, Shiroma, Nishimura, Santiago, and Black (collectively, "Defendants").  (Compl., Doc # 1.)  On August 9, 2010, Plaintiff filed a First Amended Complaint ("FAC") against Defendants.  (FAC, Doc. # 4.)   Specifically, Plaintiff sets forth allegations claiming the following violations: (Count I) Violation of 42 U.S.C. § 1981 (FAC ¶¶ 62–63); (Count II) Violation of 42 U.S.C. 2000(e) (id. ¶¶ 64–66); (Count III)

Violation of the State of Hawaii Non-Discrimination Act § 378 HRS (id.

¶¶ 67–68); and (Count IV) Intentional Infliction of Emotional Distress (id. ¶ 70).

On April 27, 2011, Defendants filed a Motion to Dismiss for Failure

to State a Claim Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("Motion"), seeking to

dismiss the FAC as against Defendants Shiroma, Nishimura, Santiago, and Black

(collectively, the "Individual Defendants"). (Mot., Doc. # 30.) On July 11, 2011,

Plaintiff filed a Memorandum in Opposition to Defendants' Motion

("Opposition").[7] (Opp'n, Doc. # 40.) On July 18, 2011, Defendants filed a Reply

in support of their Motion. (Reply, Doc. # 41.)

---

[7] On April 28, 2011, the Court issued a Notice of Hearing on Motion, which clearly and unambiguously stated that the deadline for Plaintiff to file an opposition was June 17, 2011. Plaintiff did not file his Opposition until July 11, 2011. Plaintiff's counsel, Andre S. Wooten, Esq., states that he followed Local Rule 7.4, which dictates that an opposition to a motion set for hearing shall be served and filed no less than 21 days prior to the date of the hearing. He acknowledges, however, that he did in fact receive the Notice of Hearing on Motion indicating that the Court set an earlier briefing schedule, and that he was "surprised by that." Defendants, in their Reply, request that Plaintiff's Opposition be stricken as untimely under Local Rule 7.4. The request is not without merit. However, despite the numerous defects in Plaintiff's current pleadings, the Court DENIES Defendants' request to strike the Opposition. The Court strongly cautions Mr. Wooten to pay close attention to filing and other deadlines in the instant case, and that future untimely filings may be entirely disregarded by the Court.

<u>STANDARD OF REVIEW</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  <u>See</u> <u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  <u>See</u> <u>id.</u> at 556–57; <u>see also</u> <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and

9

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  <u>See</u> <u>Twombly</u>, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  <u>Id.</u> at 586.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  <u>Id.</u> at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

<u>DISCUSSION</u>

I.      <u>Count I: 42 U.S.C. § 1981</u>

In Count I of the FAC, Plaintiff alleges that the Defendants violated 42 U.S.C. § 1981 when they "engaged in intentional racial discrimination against Plaintiff [] due to his Korean nationality by harassing him on the job and then retaliating against him when he complained about the improper harassment and thereby created a 'hostile work environment' for [Plaintiff] . . . ." (FAC ¶ 63.)

Defendants, in their Motion, argue that Plaintiff's § 1981 claim fails because he has not identified any contracts or contractual relationship with Defendants that was impaired in any way, and that he has not alleged any type of contractual relationship with any of the Individual Defendants. (Mot. at 5–6.) Defendants' argument fails for the reasons stated below.

"Among other things, § 1981 guarantees 'all persons' the same right as white citizens to 'make and enforce contracts.'" <u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 797 (9th Cir. 2003) (citing 42 U.S.C. § 1981(a)). In response to the Supreme Court case, <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164 (1989), which construed the "make and enforce" language of § 1981 narrowly in the employment context to exclude a cause of action for employment discrimination occurring during the course of employment, Congress amended § 1981 to define

11

"make and enforce contracts" as "the making, performance, modification, and

termination of contracts, and the enjoyment of all benefits, privileges, terms, and

conditions of the contractual relationship."  42 U.S.C. § 1981(b).  The Ninth

Circuit then concluded that the congressional amendment to § 1981 "evinced

congressional intent to permit hostile work environment claims under § 1981,"

because "[a] hostile work environment interferes with the 'enjoyment of all

benefits . . . and conditions of the contractual relationship' of employment."

Manatt, 339 F.3d at 797.

        It is evident in the instant case that Plaintiff seeks relief under § 1981

for a hostile work environment and a retaliation claim.  Thus, the impaired

contractual relationship at issue is the one Plaintiff maintains with his employer

OTS.  Although Plaintiff's Complaint does not explicitly state the existence of a

contractual relationship between himself and OTS, it clearly states that he is

employed by OTS.  In his Opposition, Plaintiff clarifies that the Defendants

"performed actions which were designed to impair or interfere with Plaintiff []'s

contract of employment with the Defendant employer."  (Opp'n at 2–3.)  See

Peagram v. Herdich, 530 U.S. 211, 230 n. 10 (2000) (stating that "we may use

[plaintiff]'s brief to clarify allegations in her complaint whose meaning is

unclear.") Thus, Plaintiff has sufficiently alleged the existence of a contractual

relationship between himself and his employer.

Although the argument set forth by Defendants in their Motion fails[8],

the Court determines that Plaintiff's § 1981 claim states insufficient facts. Plaintiff

attempts to allege both a hostile work environment and a retaliation claim against

Defendants under § 1981. Section 1981 was "meant by its broad terms, to

proscribe discrimination in the making or enforcement of contracts against, or in

favor of, any race." McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273,

295–96 (1976). Thus, although claims for both hostile work environment and

retaliation may be brought pursuant to § 1981, such claims are still limited to race-

based claims. See Jackson v. Birmingham Bd. of Ed., 544 U.S. 167, 173–74

(2005). Indeed, § 1981 creates a cause of action only for those discriminated

against on account of their race or ethnicity. See e.g. Johnson v. Riverside

Healthcare Sys., 543 F.3d 1116, 1122–23 (9th Cir. 2008); Jones v. Bechtel, 788

F.2d 571, 574 (9th Cir. 1986). Therefore, in order for Plaintiff's claims under

---

[8] The Court notes that Defendants also attempt to argue that Plaintiff was not
in a direct contractual relationship with the Individual Defendants. (Mot. at 6.)
The Court does not reach this argument due to its determination that Plaintiff fails
to state a claim under § 1981.

§ 1981 to succeed, he must set forth sufficient facts indicating that he was discriminated against on a racial basis.

Plaintiff complains that he was discriminated against on the basis of the fact that he is Korean American. In support of his proposition, he cites the fact that the Individual Defendants are non-Korean. He also states that Defendants Shiroma and Black did not talk to other bus drivers, who were predominantly Japanese or Hawaiian, in the same manner that they talked to Plaintiff. (FAC ¶ 12.) Plaintiff additionally mentions that with the exception of three other Korean men and three or four African American drivers, the vast majority of the employees at OTS are either of Japanese or Polynesian descent. (Id. ¶ 45.)

These facts alone are insufficient to show that the alleged behavior by Defendants toward Plaintiff was racially motivated. Nowhere does Plaintiff present evidence to show that the facts laid out in the FAC, assumed true, were motivated by his Korean heritage. Although Plaintiff seems to indicate that other employees were not treated the same way as him, he fails to tie this behavior to the fact that he is of Korean ancestry. Courts have found that overt acts coupled with racial remarks are sufficient to state a claim under § 1981. See Evans v. Mckay, 869 F. 2d 1341, 1345 n. 3 (9th Cir. 1989). Simply stating, however, that the Individual Defendants were not Korean, or that there were not many Korean

employees at OTS, is insufficient to show that race was the motivating factor behind Defendants' actions.

Moreover, in the multiracial and ethnic environment in which the Plaintiff works at OTS, he asserts that comments made to him, none of which are of a racial nature, must be the result of discrimination. However, it is just as likely that there are a myriad of other reasons why the certain co-employees who allegedly taunted Plaintiff might be doing so, such as simply their dislike of him or personal reasons having nothing to do with discrimination. While such behavior may create a cause of action under state law, under some theory, it clearly does not implicate a federal constitutional violation. Indeed, Plaintiff's statement that Defendants "engaged in intentional racial discrimination against Plaintiff [] due to his Korean nationality . . ." is a legal conclusion entitled to no weight. (FAC ¶ 63); See Iqbal, 129 S. Ct. at 1949. Thus, because Plaintiff fails to provide the Court with any evidence that Defendants' actions were racially motivated, his § 1981 claim fails.

Accordingly, the Court GRANTS Defendants' Motion as to Count I, and DISMISSES WITHOUT PREJUDICE Plaintiff's § 1981 claim as against the Individual Defendants.

II.     Count II: 42 U.S.C. § 2000(e) (Title VII)

In Count II of the FAC, Plaintiff alleges that "[t]he actions of employees of the Defendant [OTC] . . . violat[ed] [] the 1964 Civil Rights Act . . . ." (FAC ¶ 64.)  Specifically, he alleges that "[t]he Defendants, who are of non-Korean heritage, have engaged in intentional racial discrimination against Plaintiff [] due to his Korean nationality by harassing him on the job and then retaliating against him when he complained about the improper harassment and thereby created a "hostile work environment" for [Plaintiff] . . . ." (Id. ¶ 66.)

Defendants move to dismiss this claim, which appears to arise under Title VII of the Civil Rights Act of 1964, as against the Individual Defendants by arguing that individual employees cannot be held personally liable under Title VII. (Mot. at 4.)

The Ninth Circuit has conclusively determined that Title VII does not impose individual liability on employees, supervisory or otherwise, which this Court has recognized.  See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993); Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003) ("Title VII does not provide a cause of action for damages against supervisors or fellow employees."); Pink v. Modoc Indian Health Project, 157 F.3d 1185, 1189 (9th Cir. 1998) ("[C]ivil liability under Title VII does not extend to

16

individual agents of the employer who committed the violations, even if that agent is a supervisory employee."); Greenlaw v. Garrett, 59 F.3d 994, 1001 (9th Cir. 1995) ("Under Title VII there is no personal liability for employees, including supervisors . . . ."); Sherez v. State of Hawaii Dep't of Educ., 396 F. Supp. 2d 1138, 1148 (D. Haw. 2005); Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1048 (D. Haw. 2000) ("Individual employees of employers, including supervisors and managers, are not personally liable as 'employers' under Title VII.").

Here, the Individual Defendants are clearly individual employees of Defendant OTS, thus they may not be held liable under Title VII. Further, Plaintiff, in his Opposition, concedes that only OTS may be held liable under Title VII. (Opp'n at 2.) Accordingly, the Court GRANTS Defendants' Motion as to Count II, and DISMISSES WITH PREJUDICE Plaintiff's Title VII claim against the Individual Defendants because it fails as a matter of law.

III.    Count III: Hawaii Revised Statute § 378

In Count III of the FAC, Plaintiff alleges that the actions of the Individual Defendants "violate the Hawaii State Employment Non-Discrimination Act." (FAC ¶ 67.) Plaintiff further states that Defendants "have engaged in intentional racial discrimination against Plaintiff [] due to his Korean nationality by

harassing him on the job and then retaliating against him when he complained about the improper harassment . . . ." (Id. ¶ 68.)  Although it is not entirely clear, Plaintiff appears to be alleging violations of Hawaii Revised Statutes ("HRS") §§ 378-2(1), (2), and (3).[9]

Defendants argue that Plaintiff's claims under HRS § 378-2(1) and (2) should be dismissed because the Individual Defendants may not be held liable for unlawful conduct under those statutes, and that Plaintiff's claims under HRS § 378-2(3) should be dismissed because Plaintiff "has not identified or alleged any discriminatory practice that any of the individually-named Defendants aided or abetted." (Mot. at 6–7.)  The Court will address these arguments in turn.

A.    HRS § 378-2(1) and (2)

HRS § 378-2 provides that it shall be an unlawful discriminatory practice:

(1) Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record:

(A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment . . .

---

[9] No other sections of HRS Chapter 378 would apply to the facts alleged in Plaintiff's FAC.

(2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed to any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part . . .

Haw. Rev. Stat. § 378-2(1) and (2).

The Hawaii Supreme Court has not addressed the issue of whether there is individual liability under the Hawaii Fair Employment Act. Further, the Court recognizes that there is a split in this district as to whether HRS § 378-2 imposes liability against individual employees. Judge Susan Oki Mollway and this judge have ruled that there is no individual liability under § 378-2, except under subsection 378-2(3), which concerns aiding, abetting, inciting, compelling, or coercing discrimination. See e.g. Lum v. Kauai County Council, 2007 WL 3408003 (D. Haw. Nov. 9, 2007) (Mollway, J.), aff'd, 385 Fed. Appx. 860, 2009 WL 4912393, at *1 (9th Cir. 2009) (affirming district court ruling and stating that there is no individual liability under Hawaii Revised Statutes § 378-2(1)(A) and (2)) ; Lavarias v. Hui O'Kakoa Security, 2006 WL 3422256 (D. Haw. Nov. 28, 2006) (Ezra, J.); Maizner v. Haw. Dept. of Educ., 405 F. Supp. 2d 1225, 1235 (D. Haw. 2005) (Mollway, J.); White v. Pac. Media Group, 322 F. Supp. 1101, 1114 (D. Haw. 2004) (Ezra, J.); Luzon v. Atlas Ins. Agency, 284 F. Supp. 2d 1261,

19

1265 (D. Haw. 2003) (Mollway, J.); <u>Mukaida v. Hawaii</u>, 159 F. Supp. 2d 1211,

1226 (D. Haw. 2001) (Mollway, J.).

Alternatively, Judges J. Michael Seabright, Alan C. Kay, and the late

Samuel P. King have determined that § 378-2 does indeed impose individual

liability.  <u>See</u> <u>e.g.</u> <u>Hale v. Haw. Publ'ns, Inc.</u>, 468 F. Supp. 2d 1210, 1229 (D. Haw.

2006) (Kay, J.); <u>Sherez v. State of Haw. Dep't of Educ.</u>, 396 F. Supp. 2d 1138,

1145 (D. Haw. 2005) (Seabright, J.); <u>Black v. City & County of Honolulu</u>, 112 F.

Supp. 2d 1041, 1056–57 (D. Haw. 2000) (King, J.).

Given the split in the Court, this judge revisits the issue here, and

again finds, as in <u>Lum</u>, <u>Lavarias</u>, <u>Maizner</u>, <u>White</u>, <u>Luzon</u>, and <u>Mukaida</u>, that

individuals cannot be held liable under § 378-2(1) and (2).  In doing so, the Court

notes that the legislature intended to include employees as personally liable

pursuant to § 378-2(3), but failed to mention personal liability for employees for a

violation of the statute in general.  As stated in <u>Luzon</u>, the legislature "clearly knew

how to include employees within a statute's scope," and in fact did so in § 378-

2(3), thus its failure to do so through the remainder of 378-2 suggests that

employees are not held liable.  284 F. Supp. 2d at 1265 n.1.

In the instant case, Defendants argue that the Individual Defendants

may not be held personally liable because "individual employees are generally not

20

subject to liability under H.R.S. Chapter 378." (Mot. at 7.) Plaintiff alternatively cites Judge Kay's opinion in <u>Hale</u>, and concludes that the Individual Defendants "should be required to defend the actions alleged as discriminatory racial harassment in the complaint . . . ." (Opp'n at 12.) For the reasons stated above, the Court remains unconvinced that the Individual Defendants may be held liable under §§ 378-2(1) and (2), and thus concludes that individual liability may not be imposed upon them.

B.  <u>HRS § 378-2(3)</u>

To the extent Plaintiff attempts to plead a claim for violation of HRS § 378-2(3), the facts alleged by Plaintiff are insufficient. Section 378-2(3) allows claims against individuals who are not employers if the individuals "aid, incite, compel, or coerce" discrimination. Haw. Rev. Stat. § 378-2(3). Defendants argue that Plaintiff "has not identified or alleged any discriminatory practice that any of the individually-named Defendants aided or abetted." (Mot. at 7.) Plaintiff argues that he "has alleged and can prove that the named Defendants each performed several actions individually and together which clearly a jury could find were 'aiding, abetting, inciting, compelling, or coercing['] discriminatory actions against the Plaintiff," and then goes on to repeat paragraphs 11–12, 14, 29–32, 34–37,39, 42, and 44 of the FAC. (Opp'n at 9–12.)

Despite the facts restated in the Opposition, Plaintiff has not clearly described how the Individual Defendants aided, abetted, incited, compelled, or coerced discrimination. Plaintiff has pled only that multiple persons were involved in the alleged discrimination, but such behavior falls short of aiding and abetting. Indeed, Plaintiff has not shown that any communication by any of the Individual Defendants led anyone else to also discriminate or partake in unlawful practices against him. Simply the fact that multiple people may have treated Plaintiff poorly, or even discriminatorily, does not automatically imply that they aided and abetted each other in doing so. Further, the Individual Defendants may not be held liable under § 378-2(3) for any discriminatory behavior they may have conducted themselves, because they "cannot 'be liable for aiding and abetting [themselves].'" White, 322 F. Supp. 2d at 1115 (quoting Mukaida, 159 F. Supp. 2d. at 1240). Thus, Plaintiff does not allege sufficient facts in his FAC that would establish the Individual Defendants' liability under HRS § 378-2(3).

Accordingly, the Court GRANTS Defendants' Motion as to Count III, and DISMISSES WITHOUT PREJUDICE Plaintiff's HRS § 378 claim against the Individual Defendants.

IV.    Intentional Infliction of Emotional Distress

In Count IV of the FAC, Plaintiff alleges that "[t]he actions of harassment and intentional retaliation specified above perpetrated upon the Plaintiff [] by the named Defendants each of them were designed to intentional [sic] cause and did cause Plaintiff [] sever[e] emotional distress, such that he had to seek professional counseling to cope."  (FAC ¶ 69.)  Under Hawaii law, IIED is an independent tort to be analyzed separately from other claims.[10]  Hac. v. Univ. of Haw., 73 P.3d 46, 60 (Haw. 2003); Nelson v. Univ. of Haw., 38 P.3d 95, 113 (Haw. 2001).  In order to successfully set forth a claim of IIED, Plaintiff must allege sufficient facts to establish, "(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another."  Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (citing Hac, 73 P.3d at 60–61).

---

[10] Defendants, in their Motion, move to dismiss Plaintiff's claim for intentional infliction of emotional distress ("IIED") on the grounds that Plaintiff's IIED claim is "entirely derivative upon his claims for harassment, discrimination and retaliation."  (Mot. at 8.)  However, because the Court dismisses the instant Count for failure to plead sufficient facts stating an IIED claim, the Court does not reach Defendant's "derivative" argument.  In doing so, though, the Court is not expressing any opinion about the validity of Plaintiff's overarching harassment, discrimination, and retaliation claims.

The Supreme Court of Hawaii has construed the term "outrageous," for purposes of an IIED claim, to mean "without just cause or excuse and beyond all bounds of decency." Enoka, 129 P. 3d at 872 (citing Lee v. Aiu, 936 P.2d 655, 670 n. 12 (1997) (internal quotation marks and citations omitted)). "Moreover, 'extreme emotional distress' constitutes, inter alia, mental suffering, mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'" Id. (quoting Hac, 73 P.3d at 60). Plaintiff's FAC fails to sufficiently plead facts meeting either of these definitions under Hawaii law.

As to the "outrageous" element of an IIED claim, courts have found outrageous conduct under Hawaii law where the defendant insurance company intentionally misled the plaintiff claimant "in an attempt to gain and exploit her trust" and "refused to settle the case for what it was worth," Young v. Allstate Ins. Co., 198 P.3d 666, 691 (Haw. 2008), and where the defendant hospital lost the remains of the plaintiff's infant child, Ritchie v. Wahiawa General Hospital, 597 F. Supp. 2d 1108, 1112. Courts have, alternatively, not found outrageous conduct where plaintiff's supervisor yelled at her over the phone and criticized her appearance in front of other employees, Shoppe v. Gucci America, Inc., 14 P.3d 1049, 1068 (Haw. 2000), and where the defendant insurance company denied

plaintiff's claim based on the statute of limitations which had not yet expired when plaintiff made her claim for benefits, <u>Enoka</u>, 128 P. 3d at 871–72.

Here, Plaintiff alleges that Defendants yelled and screamed at him publicly, spoke to him as though he were unintelligent, told him he could get fired for filing a false claim of discrimination, and accused him of various wrongdoings that he claims he was not responsible for. (FAC at 11–12, 14, 29, 53–54.) The Court finds that this conduct is more akin to those in <u>Shoppe</u> and <u>Enoka</u>, than in <u>Young</u> and <u>Ritchie</u>. Specifically, "[a]lthough Plaintiff may have resented the tone and substance of [Defendants'] criticisms, we can hardly classify such remarks as "outrageous" or "beyond the bounds of decency." <u>Shoppe</u>, 14 P.3d at 1068. Therefore, the Court finds that Plaintiff's FAC fails to allege facts fulfilling the "outrageous" element of an IIED claim.[11]

As to the extreme emotional distress element of an IIED claim, courts have found extreme emotional distress to exist "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress

---

[11] The Court additionally notes that the accusations made in the FAC are pointed at various people, some of whom are not even named as Defendants in the instant complaint. Thus, the Court is unable to find that any specific Defendant's conduct was "outrageous" given that Plaintiff has not specified which conduct in particular meets such criteria. Indeed, Plaintiff's IIED claim is only one paragraph long, and summarily attempts to include all of the previous facts mentioned before it, without singling out what behavior he intends to pursue under his IIED claim.

engendered by the circumstances of the case," <u>Shoppe</u>, 14 P.3d at 1068 (internal quotations omitted) (quoting <u>Rodrigues v. State,</u> 472 P. 2d 509, 520) (Haw. 1970)), and where a plaintiff "suffered unnecessary physical distress, severe shame, anxiety, worry, mental and emotional distress, fear, loss of time and expenses," <u>Young</u>, 198 P. 3d at 691–92 (internal quotations omitted).  Extreme emotional distress has also been found where the plaintiffs suffered anxiety, depression and shock.  <u>Ritchie</u>, 597 F. Supp. 2d at 1112.

Here, Plaintiff makes little more than the conclusory statement that "[t]he actions of harassment and intentional retaliation . . .were designed to intentional [sic] cause and did cause Plaintiff [] sever[e] emotional distress, such that he had to seek professional counseling to cope."  (FAC ¶ 69.)  Indeed, Plaintiff fails to allege any emotional reaction other than "stress" and that he had to take "family leave".  <u>See</u> (FAC ¶47.)  These facts, alone, are insufficient to show that Plaintiff suffered extreme emotional distress.  For the aforementioned reasons, the Court finds that both the "outrageous" conduct and extreme emotional distress elements of Plaintiff's IIED claim fail.

Accordingly, the Court GRANTS Defendants' Motion as to Count IV, and DISMISSES WITHOUT PREJUDICE Plaintiff's IIED claim as against the Individual Defendants.

## V.    Leave to Amend

The Court recognizes that it may be possible for Plaintiff to state a claim if provided the opportunity to amend his FAC. Accordingly, the FAC, with the exception of Plaintiff's Title VII claim, is DISMISSED as against the Individual Defendants in this action, with leave to amend no later than 30 days from the filing of this Order.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss (Doc. # 30). The Court DISMISSES WITH PREJUDICE Plaintiff's Title VII claim and DISMISSES WITHOUT PREJUDICE Plaintiff's remaining claims, as against the Individual Defendants. Plaintiff is GRANTED leave to amend his complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 10, 2011.



_____
David Alan Ezra
United States District Judge

Park v. Oahu Transit Services, Inc. et al., Cv. No. 10-00445 DAE-KSC; ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; (2) DISMISSING WITH PREJUDICE PLAINTIFF'S TITLE VII CLAIM AGAINST THE INDIVIDUAL DEFENDANTS; (3) DISMISSING WITHOUT PREJUDICE ALL REMAINING CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS; AND (4) GRANTING PLAINTIFF LEAVE TO AMEND